IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**TEXAS RIO GRANDE LEGAL AID, INC.**
**d/b/a SOUTHERN MIGRANT LEGAL**
**SERVICES and MIGUEL ANGEL DE**
**SANTIAGO-GARCIA**                                                                                         **PLAINTIFFS**

V.                                               CIVIL ACTION NO. 3:10CV406 HTW-LRA

**LES RANGE, in his official capacity**
**as Executive Director of the Mississippi**
**Department of Employment Security**                                          **DEFENDANT**

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### FOR FAILURE TO STATE A CLAIM

COMES NOW Defendant, Les Range, in his official capacity as Executive Director of the Mississippi Department of Employment Security ("the Director"), through Mississippi Attorney General Jim Hood, and files this Memorandum in Support of Motion to Dismiss for Failure to State a Claim. Pursuant to Fed. Rule of Civ. Pro. 12(b)(6), the Defendant respectfully requests that this Court dismiss the present action for failure to state a claim upon which relief can be granted, and would show unto this Honorable Court the following, to wit:

### BACKGROUND

On December 14, 2009, Plaintiffs, Southern Migrant Legal Services ("SMLS") and Angel de Santiago-Garcia, requested confidential and statutorily privileged documents under the

Mississippi Public Records Act, Miss. Code Ann. §§ 25-61-1 through 25-61-17, from the Mississippi Department of Employment Security ("MDES") . MDES responded to the Plaintiffs' request by letter and informed both SMLS and Santiago-Garcia that the records sought were confidential and privileged by sections 71-5-127 and 71-5-131 of the Mississippi Code of 1972, and, thereby, exempt from disclosure through section 25-61-11[1].

Aggrieved, the Plaintiffs brought this action through 42 U.S.C. § 1983 as an alleged violation of the Wagner-Peyser Act, 29 U.S.C. §§ 49 *et seq.* ("the Act"). Specifically, Plaintiffs allege violations of 29 U.S.C. § 49*l*-2(a)(1) and (b)(2) and Department of Labor regulation 20 C.F.R. § 653.110(a). The statutes dictating the collection of employment statistics read in pertinent part, § 49*l*-2(a)(1):

> The Secretary [of Labor], in accordance with the provisions of this section, shall oversee the development, maintenance, and continuous improvement of a nationwide employment statistics system of employment statistics[.]

And, 29 U.S.C. § 49*l*-2(b)(2):

> The Secretary, with respect to data collection, analysis, and dissemination of labor employment statistics for the system, shall carry out the following duties: [listing duties].

Neither of the two statutes provide a specific right to migrant workers or to legal service organizations to access the statistics that are required to be collected by the Act. The Secretary of

---

[1] In light of this action, it is to be assumed the Plaintiffs concede that the documents and materials sought are exempt by §§ 71-5-127(1) and 71-5-13 as the Plaintiffs' only argument is that the two statutes "violate federal law to the extent that they permit or require the Mississippi Department of Employment Security to withhold H-2A records." Complaint at ¶1. Thus, no discussion as to whether the documents and materials sought fall within the stated statutes is warranted. Similarly, if there is no federal law violation, the Defendant is not required to disclose the documents as they are exempt. Moreover, to the extent that the plaintiff wishes the district court to review the constitutionality of a state law as applied to him, the constitutionality of which has previously been addressed and determined by the Mississippi Supreme Court, the Eleventh Amendment further prevents such a result. *See* Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Labor, however, has promulgated additional regulations as authorized by 29 U.S.C. § 49(k). As part of that authority, the Secretary promulgated 20 C.F.R. § 653.110(a) that requires States to disclose data collected "to the public, on written request, in conformance with applicable State and Federal law." It is also this regulation that Plaintiffs contend gives them the right to the requested material which Mississippi law has exempted as confidential and privileged. Neither this regulation nor the other two statutes grant individual rights enforceable via § 1983. If there are any issues with noncompliance of the challenged federal laws, the Secretary of Labor can cut funding to MDES. Consequently, the Plaintiffs' attempt to adjudicate their alleged grievance in this Court is not proper because MDES has not violated any rights vested in the plaintiffs; thus, they have failed to state a claim upon which relief can be granted and must be dismissed pursuant to Fed. Rule of Civ. Pro. 12(b)(6).

## ARGUMENT

**I.     The Plaintiffs 42 U.S.C. § 1983 Claim must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6) because the Plaintiffs have failed to identify a right that has been violated as required by 42 U.S.C. § 1983 to properly state a claim.**

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Delancey v. City of Austin, 570 F.3d 590, 592 (5th Cir. 2009) (citing Touche Ross Co. v. Redington, 442 U.S. 560 (1979) (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979)). "In enacting a federal statute, Congress may choose to confer individual rights subject to private enforcement, but to do so the statute must 'speak with a clear voice' and 'unambiguous[ly]" confer those rights." Id. (citing Gonzaga University v. Doe, 536 U.S. 273, 280 (2002)). Similarly, actionable rights

secured by laws of the United States must be "unambiguously conferred to support a cause of action brought under § 1983." Gonzaga, 536 U.S. at 283.

Here, the Plaintiffs are attempting to enforce the Wagner-Peyser Act through § 1983. However, the Plaintiffs have failed to state a claim upon which relief can be granted. Regarding a motion for failure to state a claim, "[a Rule 12(b)(6)] dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citing Conely v. Gibson, 355 U.S. 41, 45-46 (1957) (internal quotations and citation omitted). "To pursue a claim under § 1983, a plaintiff must (1) allege a violation of *rights* secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Southwestern Bell Telephone, LP. v. City of Houston, 529 F.3d 257, 260 (5th Cir. 2008) (internal quotations omitted) (emphasis in original). More importantly, "it is only violations of *rights*, not *laws*, which give rise to § 1983 actions." Gonzaga, 536 U.S. at 283 (emphasis in original) (citing Blessing v. Freestone, 520 U.S. 329, 340 (1997)).

Here, the Plaintiffs only allege that the Mississippi statutes, which make the sought after materials confidential and privileged, violate federal ***law* - *not rights*** secured by federal law. As a result, the Plaintiffs' have failed to allege a required element necessary to obtain relief under § 1983 - that the State has violated a right secured by the laws of the United States - and their Complaint should be dismissed. The Mississippi statutes, §§ 71-5-127(1) and 71-5-131, do not violate any rights secured by federal law, namely 29 U.S.C. § 49*l*-(2)(a)(1), (b)(2) and 20 C.F.R. § 653.110(a). But, together, the statutes and regulation merely make up the administrative requirements placed by the Department of Labor onto state agencies, or speak to duties of the

Secretary of Labor in maintaining employment statistics - nowhere do they confer a right to access collected statistics to the Plaintiffs specifically, much less unambiguously and in a clear voice confer such rights.

In recent history, "The [Supreme] Court's approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983." Southwestern Bell, 529 F.3d at 261 (citation omitted). "It is presumed Congress did not intend to create a private enforceable right" and "the burden is on the plaintiff to show otherwise." Id. at 260. In determining if a statute confers an enforceable right, the Fifth Circuit has outlined the remedies, standard, and process for rights determination:

> In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather an action by the Federal Government to terminate funds to the State. In enacting a federal statute, Congress may choose to confer individual rights subject to private enforcement, ***but to do so must "speak with a clear voice" and "unambiguously" confer those rights***. Thus, the question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction, and the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to ***create not just a private right but also a private remedy***.

Delancey, 570 F.3d at 592-93 (internal quotations and citations omitted) (emphasis added).

The Fifth Circuit adopted the test outlined by the Supreme Court in Blessing and later clarified in Gonzaga for determining if a federal statute grants rights which are enforceable through § 1983. The Supreme Court found that in order for Spending Clause legislation to create individual rights the language of the legislation must furnish "clear notice" of the conditions imposed. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296 (2006). The requirement of clear notice evolved from the contract analogy applied to Spending Clause

legislation at issue in Pennhurst State School and Hospital v. Halderman ("Pennhurst I").  There, the Supreme Court reasoned as follows:

> Unlike legislation enacted under § 5, however, legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.  The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."  There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.  Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.  By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

451 U.S. 1, 17 (1981) (internal citations omitted).  Subsequently, the Court, in Blessing v. Freestone, identified three factors to determine whether a statutory provision creates federal rights:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

520 U.S. 329, 340-41 (1997).

Gonzaga v. Doe gave the Court an opportunity to clarify the first Blessing factor after some courts found enforceable federal rights "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect[.]"  536 U.S. 273, 283 (2002).  Rejecting this approach, the Supreme Court found that "nothing short of an unambiguously conferred right" is necessary to present a private right enforceable under § 1983.  Gonzaga, 536 U.S. at 283. "Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced

under the authority of that section." *Id.*  The Gonzaga Court also clarified that both the "text and structure of a statute" must show that "Congress intends to create new individual rights[.]" Id. at 286.  "In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms[.]" Id. at 290. Presently, the Plaintiffs have failed to do so.

**A.     The text of the challenged laws does not contain the "sort of rights creating language" that indicates an intent by Congress to provide an individual enforceable right.**

On the face of their Complaint, the Plaintiffs have not identified clear and unambiguous rights-creating language requiring MDES to provide unfettered access to the employment statistics required to be gathered by the statutes at issue.  Even so, the Director will examine more closely the language of those provisions of the Act cited by Plaintiffs to determine whether they vest Plaintiffs with any enforceable rights.  The Court must "determine whether Congress *intended to create a federal right*," Gonzaga, 536 U.S. at 283, and "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit[.]" Id.  For a statute to confer rights enforceable through § 1983, the statute must contain "the sort of 'rights creating' language critical to showing the requisite congressional intent to create new rights."  Delancey, 570 F.3d at 595 (quoting Equal Access for El Paso v. Hawkins, 509 F.3d 697, 703 (5th Cir. 2007)).  That sort of language in the text of a statute "must be phrased in terms of the person benefitted."  Id. at 593 (quoting Gonzaga, 536 U.S. at 284).

The Fifth Circuit noted examples of "this sort of explicit 'right- or duty-creating language'" in Delancey:

> Title VI provides: "*No person* in the United States *shall*...be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. Title IX provides: "*No person* in the United States *shall*, on the basis of sex,...be subjected to discrimination under any educational program or activity receiving Federal financial assistance."

570 F.3d at 594 n.6. (emphasis in original). Thus, it is crucial the statute is written in such a way and contain such language to confer rights, otherwise the courts "rarely impute to Congress an intent" to create such rights. Id. Also, "statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Id. at 594 (citing Alexander v. Sandoval, 532 U.S. 275, 289 (2001) (internal quotations omitted)).

Simply put, the statutes and regulations at issue before this Court do not focus on rights granted, but are couched on what the Secretary of Labor, the Department of Labor, or the State Agency must or must not do:

> 29 U.S.C. § 49*l*-2(a)(1): "**The Secretary [of Labor]** in accordance with the provisions of this section, **shall** oversee the development, maintenance, and continuous improvement of a nationwide employment statistics system of employment statistics[.]" (emphasis added).

> 29 U.S.C. § 49*l*-2(b)(2): "**The Secretary**, with respect to data collection, analysis, and dissemination of labor employment statistics for the system **shall** carry out the following duties: [listing duties]." (emphasis added).

> 20 C.F.R. § 653.110(a): "**State agencies shall** disclose to the public, on written request in conformance with applicable State and Federal law, the data collected by State and local offices pursuant to § 653.109, if possible within 10 working days after receipt of the request. (emphasis added).

Here, the federal laws in question speak to the entities regulated and not the persons benefitted. There simply is no clear and unambiguous rights creating language. The statutes at issue do not confer individual rights.

Similarly, in Southwestern Bell Telephone, LP. v. City of Houston, the Fifth Circuit considered whether a number of Houston, Texas city ordinances violated the Federal Telecommunications Act of 1996 ("FTA"). 529 F.3d at 259. The challenged provisions of the FTA stated:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

Id. at 261 (quoting 47 U.S.C. § 253(a)). Section 253(c) of the FTA was also challenged; it read:

> Nothing in this section affects the authority of a state or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

Id. The Fifth Circuit acknowledged the existing circuit split as to whether the FTA provided any implied enforceable rights but properly noted that the previous decisions finding implied enforceable rights "were rendered prior to the Supreme Court's...clarification in Gonzaga." Id.

The Court then determined that nothing in the text or structure of § 253 indicated an intention to create an individual private right enforceable by some identifiable class through § 1983. Id. The Court continued that the post-Gonzaga decisions "are consistent with our court's requiring...the federal statute to *unambiguously* give rise to privately enforceable, substantive rights." Id. (internal quotations and citation omitted) (emphasis in original). Discussing the analysis of the text and structure of the statute, the Court wrote:

> Neither FTA section at issue focuses on rights granted to telecommunications providers. Section 253(a) is couched entirely in prohibitions on what the state or local government cannot do, rather than on a right for telecommunications companies. It states that "[n]o State or local statute or regulation or other...legal requirement, may prohibit". The section is not "phrased in terms of the persons benefitted"; rather, it prohibits state and local governments' conduct. As held by the Tenth Circuit, FTA § 253(a) "is not focused

>on the benefits granted to the telecommunications providers [but] focuses on restricting the type of telecommunications regulations a local authority may enforce."

Id. at 261-62 (citations omitted).

Again, like the FTA examined by the Fifth Circuit in Southwestern Bell, the challenged statutes and regulations here focus on "policy and practice" of the Federal and State agencies, not on the persons benefitted. *See* Gonzaga, 536 U.S. at 287-88 (FERPA's nondisclosure provisions further only speak in terms of institutional policy and practice, not individual instances of disclosure."); *c.f.* 29 U.S.C. 49 (The policy statement of the challenged laws declares, "[i]n order to promote the establishment and maintenance of a national system of public employment offices, the United States Employment Service shall be established and maintained within the department of labor."). Here, the statutes and regulation do not begin to conform to the content nor structure required of statutes which the Supreme Court and Fifth Circuit have found to imply enforceable rights - much less unambiguously state those rights on par with the standard the Fifth Circuit followed in Southwestern Bell. *Compare* Delancey, 570 F.3d at 594 n.6. (emphasis in original) (noting that Title IX provides: "*No person* in the United States *shall*, on the basis of sex,...be subjected to discrimination under any educational program or activity receiving Federal financial assistance" which places the persons benefitted as the subject not object of the statutory scheme); *with* id. at 594 (finding that the URA did not focus on the persons benefitted but the entity regulated because the regulated entity was the subject not the object, "**The head of any displacing agency shall** ensure...."); *and* Southwestern Bell, 529 F.3d at 261 (finding there was no implied enforceable right the Court examined the FTA, "***No state or local statue or regulation...may** prohibit...***").

Only the regulation, 20 C.F.R. § 653.110, mentions a party other than the State or Federal agencies or the Secretary of Labor. It reads, "State agencies shall disclose *to the public*...." (emphasis added). However, the regulation focuses on the State Agencies regulated, not the person or party benefitted. If it were determined that "the public" is the focus of that regulation, and not the agency that is regulated, it is still questionable whether § 653.110 has a basis in the statute sufficient to confer an enforceable right. The Supreme Court has consistently made the point that "[t]he language of the statute and not the rules control." Touche Ross, 442 U.S. at 577. "[I]t is most certainly incorrect to say that the regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." Alexander, 532 U.S. at 291. Consequently, Congress, not the Department of Labor, may make laws. Moreover, any sort of right that a statute would impliedly give to "the public" would be a right in the aggregate and not sufficient to provide a private enforceable right.

The Fifth Circuit has opined on the necessity that rights implied in Federal statutes be individualized and not rights given in the aggregate. In Equal Access for El Paso, Inc. v. Hawkins, the Court determined that the Medicaid Act's Equal Access provision did not confer rights enforceable under § 1983. 509 F.3d at 703. In making that finding, the Court noted that "the Equal Access provision does not create rights for individuals or an identifiable class" but "only [dictates] to the state and the Secretary in their functions of proposing and approving a state plan [such that] services are available to the general population in a geographic area." Id. (internal quotations omitted). The Court continued, finding that "like the provisions at issue in Gonzaga and Blessing, the Equal Access provision only speaks in the terms of institutional policy and practice, has an 'aggregate' rather than an individualized focus, and is *not concerned*

Page 11 of 20

*with whether the needs of any particular person or class of individuals have been satisfied*. Id. (emphasis added).

The provisions at issue before this Court are a similar type of administrative practice, dealing with statistics gathering. The statutes presented in the Complaint fail to mention any other person or class of persons other than the states, the Department of Labor, or the Secretary. Therefore, it is hard to argue with a straight face that the statutes provide any unambiguous private right that can be enforced through § 1983. On the other hand, § 653.110 directs state agencies to disclose documents or requested materials to "the public" in the aggregate and, hence, do not concern themselves with the needs of any particular person or class of persons. And, even if § 653.110 can find legal basis in the statute, the regulation talks in terms of institutional policy and practice, not as a particular individually protected and enforceable right. None of the Plaintiffs' claims for relief may be addressed because they have failed to identify a "right" that has been violated which is a necessary element of a viable § 1983 claim. Any shortcomings in the way MDES doles out requested materials (which is in conformance with Mississippi law) is properly addressed by the Secretary of Labor through a termination of funds - not by these Plaintiffs in this Court. Accordingly, the Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

**B.    The structure of the challenged laws does not indicate an intent by Congress to provide an individual enforceable right.**

In addition to scrutinizing the specific text, Gonzaga requires an examination of the structure of the challenged laws themselves to discern whether Congress created individually

enforceable rights. *Id.*, 536 U.S. at 286. Not only have the Plaintiffs failed to allege a violation of a right, in this case, like in Delancey, Congress has also provided a remedy for noncompliance with this section of the Act - termination of funds. Congress in the clearest of language set out the remedies for this section of the Act in 29 U.S.C. § 49l-2(e)(2): "In order to receive Federal financial assistance under this section, the State agency shall [perform enumerated duties].". Conspicuously absent, however, is a private remedy or right of action for noncompliance, nor can one be implied.

Spending Clause legislation by its nature counsels against individually enforceable third-party rights. After all, the Wagner-Peyser Act is an example of cooperative federalism - an agreement directly between the federal and state sovereigns. While other entities benefit and have interests, the Wagner-Peyser Act is bound by the voluntary relationship between the federal and state governments. The opening section of the Wagner-Peyser Act reads: "In order to promote the establishment and maintenance of a national system of public employment offices, the United States Employment Service shall be established and maintained within the department of labor." 29 U.S.C. 49. This stated purpose says nothing of individual rights or entitlements and highlights the fact that this Act is an administrative framework for state public employment offices to be run by one Federal Employment Service within the Department of Labor.

The Supreme Court in Gonzaga made clear that "[i]n legislation enacted pursuant to the spending power, the typical remedy for state non-compliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the federal government to terminate funds to the State." 536 U.S. at 280 (quoting Pennhurst I, 451 U.S. at 28). Thus, the

remedy for non-compliance with Spending Clause legislation concentrates on the bilateral relationship between Congress and the States: Congress in this case provides that same remedy by which requirements in this portion of the Act must be followed or the Secretary of the Labor may terminate Federal funding.  Congress spoke in a clear voice: "[i]n order to receive Federal financial assistance *under this section,* the State agency shall [perform enumerated duties]." 29 U.S.C. § 49*l*-2(e)(2) (emphasis added).  Because Congress clearly provided remedies for noncompliance *with this section* of the Act, it can be further inferred that Congress did not intend to create private enforceable rights as to this administrative portion of Wagner-Peyser.

To be sure that Congress intended no private enforceable rights to exist within this portion of Title 29, Congress has provided for explicit, unambiguous, and clearly enunciated enforceable rights in another parts of the Title.  Moreover, the individualized and enforceable rights are limited to the portions of the Labor statutes where they are found.  Congress knows how to unambiguously provide for private enforceable rights.  For example, Congress has clearly provided for private enforceable rights to migrant workers in Chapter 20 at 29 U.S.C. § 1854(a); it reads:

> Any person aggrieved by a violation *of this chapter* or *any regulation under this chapter* by a farm labor contractor, agriculture employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to citizenship of the parties and without regard to exhaustion of any alternative administrative remedies provided herein.

(emphasis added).  Further, the fact that Congress intended to limit the enforceable rights to that portion of the Labor statutes - besides the unambiguous text - is found in the purpose and policy of each section.  The object of Chapter 20 to which Congress has now provided an enforceable

action is to protect fundamental human rights, s*ee* 29 U.S.C. § 1802 ("It is the purpose of this chapter...to assure necessary protections for migrant and seasonal agriculture workers[.]"); that is in stark contrast to the object of Chapter 4B, the creation of public employment offices and duties.  *Compare* 29 U.S.C. 49 ("In order to promote the establishment and maintenance of a national system of public employment offices, the United States Employment Service shall be established and maintained within the department of labor.").  In each separate section Congress provided for a specific and unambiguous remedy mechanism; in the case of the sections challenged here, the remedy was the termination of funds.

     Gonzaga addressed this type of "termination" mechanism, noting that where Congress empowered the Secretary of Education to "deal with violations" of the respective act such provision counseled against finding individually enforceable rights.  536 U.S. at 289-90.  In directly addressing the Secretary's authority under the Medicaid Act, the First Circuit, following Gonzaga, found that "the presence of an enforcement mechanism weighs against inferring private rights of action.  This is decidedly not a situation lacking an outside watchdog."  Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 58 (1st Cir. 2004) (internal citation omitted).

     In the end, "[w]e are forced by Gonzaga to abjure the notion that anything short of an unambiguously conferred private individual 'right,' rather than the broader or vaguer 'benefits' or 'interests,' may be enforced under § 1983."  Equal Access, 509 F.3d at 704.  Moreover, "The [Supreme] Court's approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983."  Southwestern Bell, 529 F.3d at 261.  The Plaintiffs have failed to point to any rights creating language here and an examination of the stated laws illustrate a complete lack of unambiguous

text indicating an intent by Congress to create an individualized enforceable right.  The lack of clear rights creating language on the face of the statutes creates an inference that Congress did not intend to create a private enforceable right.  That inference is further buttressed by Congress's grant of authority in the Secretary of Labor to terminate funds upon noncompliance of the challenged laws.  Thus, the Directors arguments in opposition to finding individual enforceable rights, which Congress has not unambiguously conferred, is also consistent with the current doctrinal track of the Supreme Court and the Fifth Circuit concerning the statutory creation of individual rights.  Respectfully, the Plaintiffs have not stated any violation of a secured right for the purposes of § 1983 and their Complaint should be dismissed for failure to state a claim upon which relief can be granted.

II. **The Plaintiffs' alternative sub-delegation argument fails to state a claim and would fail regardless because there is no stated authority in the Secretary to determine confidentiality or privilege, nor is there a prohibition for States to engage in the same**.

The Plaintiffs' state an alternative argument that the creation of confidentiality or privilege rules by the state is an "unlawful delegation of [Department of Labor's] rulemaking authority." Complaint at ¶ 18.  If the Court were to find that no "right" was created for the purposes of § 1983 in parts I(A) and (B) above, then the Plaintiffs would have again failed to state a claim upon which relief can be granted as to their alternative argument because the Plaintiffs still have not pleaded an essential element of a § 1983 claim - a violation of a right.  Regardless, were the Court to find an enforceable right, the Plaintiffs' argument still fails to state a claim.  Specifically, the Plaintiffs contend that "Congress granted the Secretary of [Labor] sole

authority to devise confidentiality and other exemptions, but it did not authorize DOL to delegate such authority to states." Id.  This conclusory statement fails to meet the Supreme Court's pleading standards and should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

In pleading a claim, Rule 8 requires a plaintiff to provide facts that "nudge...his claim...across the line from conceivable to plausible." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1952 (2009) (holding that legal conclusions are not entitled to the assumption of truth, and claims that are "merely consistent with a defendant's liability . . . stop short of the line between possibility and plausibility" and require dismissal) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal citations omitted)).   The criteria to determine whether a claim is plausible, first set forth in Twombly and recently expounded upon in Iqbal, is that "a formulaic recitation of the elements of a cause of action" will not suffice, and neither will "naked assertions devoid of further factual enhancement[.]" Iqbal, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 555).  The plausibility standard of Rule 8 applies to all civil actions and must be met in order to survive a motion to dismiss.[2] Iqbal, 129 S. Ct. at 1953-54.

Without explanation, the Plaintiffs cite the same two federal statutes, §§ 29 U.S.C. § 49*l*-2(a)(1), (b)(2), and federal regulation, 20 C.F.R. § 653.110(a), from their primary argument as authority for their baseless contention.  20 C.F.R. § 653.110(a) states, as follows:

---

[2] Twombly abrogated the overly-forgiving Conley-Gibson pleading language.  Twombly, 550 U.S. 544, 561-64.  Now, a plaintiff must "'raise a right to relief above a speculative level,' Culliver v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 127 S.Ct. 1955, 1964-65), and 'state a claim to relief that is plausible on its face.' Twombly, 127 S.Ct. at 1974." Cutrer v. McMillan, slip copy 2009 WL 221254 *1 (5th Cir. Jan. 30, 2009) (noting that the Supreme Court had "rejected the no-set-of-facts language" [formerly] relied upon by plaintiffs, citing Culliver, 503 F.3d at 401 n. 4 (5th Cir. 2007) and Twombly, 127 S. Ct. at 1969 (2007)).

> State agencies shall disclose to the public, on written request, ***in conformance with applicable State and Federal law***, the data collected by State and local offices pursuant to § 653.109, if possible within 10 working days after receipt of the request.

(emphasis added). Section 653.110 permits the States to disclose statistical information to the public in the manner they find best. Moreover, the two statutes at issue are devoid - as far as the State can determine - of any language that would suggest that Congress intended to give the Secretary of Labor *sole* authority in making confidentiality and privilege rules regarding employment statistics. Notably, "the interpretation given a statute by the officers or agency charged with its administration is entitled to substantial deference" and "an agency's construction of its own regulations is entitled to even greater deference." <u>Avoyelles Sportsmen's League, Inc. v. Marsh</u>, 715 F.2d 897, 910 (5th Cir. 1983) (internal quotations and citations omitted). Certainly, the Secretary does not think the State is precluded from making such confidentiality and privilege determinations as DOL's own regulation declares that the disclosure of collected statistics are to be in conformance with State law.

      Therefore, because the Plaintiffs fail to state a claim under 42 U.S.C. § 1983, their alternative argument should also fail. Moreover, the Plaintiffs' alternative argument fails to meet the Rule 8 plausibility standard. The Plaintiffs have merely stated legal conclusions and expect this Court to do their legal research and craft their arguments for them. Consequently, the Plaintiffs' alternative argument should be dismissed.

      WHEREFORE PREMISES CONSIDERED and for the above stated reasons the State respectfully requests that the Court grant its Motion to Dismiss for Failure to State a Claim pursuant to Miss Rules of Civ. Proc. 12(b)(6).

RESPECTFULLY SUBMITTED, this the 9th day of August 2010.

        STATE OF MISSISSIPPI
        LES RANGE, EXECUTIVE DIRECTOR
        DEPARTMENT OF EMPLOYMENT SECURITY
        By and Through,
        JIM HOOD, ATTORNEY GENERAL
        STATE OF MISSISSIPPI


        BY: /s/ L. Christopher Lomax
        L. CHRISTOPHER LOMAX (MSB No. 103479)
        LEANNE F. BRADY (MSB No. 100793)

        L. Christopher Lomax
        Special Assistant Attorney General
        Counsel for the State Defendant
        Civil Litigation Division
        Office of the Attorney General
        Post Office Box 220
        Jackson, Mississippi 39205
        Telephone: (601) 359-5654
        Email: cloma@ago.state.ms.us

        LeAnne F. Brady
        Senior Attorney
        Mississippi Department of Employment Security
        P.O. Box 1699
        Jackson, Mississippi  39215
        Telephone: (601) 321-6072
        Email: lbrady@mdes.ms.gov

CERTIFICATE OF SERVICE

I, L. Christopher Lomax, do hereby certify that on August 9, 2010, I electronically filed the foregoing Motion to Dismiss and a Memorandum in Support of Motion to Dismiss with the Court using the ECF system, which sent notification of such filing to the parties listed below, as well as notification via United States Postal Service, first class mail, postage pre-paid to the following:

*Attorneys for the Plaintiffs*:

Robert B. McDuff
767 North Congress Street
Jackson, Mississippi 39202

Leah M. Nicholls
Brian Wolfman
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave., NW
Suite 312
Washington, District of Columbia 20001

*Attorney for the Defendant*:

LeAnne F. Brady
Senior Attorney
Mississippi Department of Employment Security
P.O. Box 1699
Jackson, Mississippi  39215

This the 9th day of August, 2010.

                                            s/ L. Christopher Lomax
                                            L. CHRISTOPHER LOMAX